1  E. Leif Reid
   Nevada Bar No. 5750
2  **LEWIS ROCA ROTHGERBER CHRISTIE LLP**
   One East Liberty Street, Suite 300
3  Reno, NV 89501
   Telephone: (775) 823-2900
4  Email: lreid@lewisroca.com

5  Adam L. Bird, (*pro hac vice*)
   D.C. Bar No. 1005485
6  **CALHOUN BHELLA & SECHREST LLP**
   2121 Wisconsin Avenue N.W., Suite 200
7  Washington, D.C. 20007
   Telephone: (202) 804-6031
8  Email: abird@cbsattorneys.com

9  *Attorneys for Plaintiffs Encompass Health*
   *Rehabilitation Hospital of Desert Canyon, LLC;*
10 *Encompass Health Rehabilitation Hospital of Las*
   *Vegas, LLC; and Encompass Health Rehabilitation*
11 *Hospital of Henderson, LLC*

12
                    **UNITED STATES DISTRICT COURT**
13                       **DISTRICT OF NEVADA**

14 ENCOMPASS HEALTH REHABILITATION          Case No.:
   HOSPITAL OF DESERT CANYON, LLC;
15 ENCOMPASS HEALTH REHABILITATION
   HOSPITAL OF LAS VEGAS, LLC; and           **COMPLAINT FOR JUDICIAL**
16 ENCOMPASS HEALTH REHABILITATION               **REVIEW**
   HOSPITAL OF HENDERSON, LLC,
17
18         Plaintiffs,

19 v.
   XAVIER BECERRA, SECRETARY OF THE
20 UNITED STATES DEPARTMENT OF
   HEALTH AND HUMAN SERVICES,
21
           Defendants.
22

23        Plaintiffs Encompass Health Rehabilitation Hospital of Desert Canyon, LLC

24 ("Encompass Health Desert Canyon"), Encompass Health Rehabilitation Hospital of Las

25 Vegas, LLC ("Encompass Health Las Vegas"), and Encompass Health Rehabilitation

26 Hospital of Henderson, LLC ("Encompass Health Henderson") (collectively "Encompass

27 Health Hospitals" or "Plaintiffs"), by and through their undersigned legal counsel, hereby

28

file this Complaint for Judicial Review against Defendant, Xavier Becerra, in his official capacity as the Secretary of the United States Department of Health and Human Services ("the Secretary"), following a series of final agency decisions involving Medicare reimbursement disputes, and in support thereof state as follows:

**PARTIES**

1.      The Encompass Health Hospitals are inpatient rehabilitation facilities ("IRFs") owned and operated by Encompass Health Corporation. Encompass Health Corporation is based in Birmingham, Alabama and registered as a foreign corporation with the Nevada Secretary of State. The Encompass Health Hospitals are all located in Clark County, Nevada.

2.      Xavier Becerra is the Secretary of the Department of Health and Human Services ("HHS") and the proper Defendant in this action pursuant to 42 C.F.R. § 405.1136(d)(1).

**JURISDICTION AND VENUE**

3.      Jurisdiction is proper pursuant to 42 U.S.C. §§ 1395ff(b)(1)(A) and (b)(2)(C), which authorize judicial review of final agency decisions issued by the Secretary as to Medicare reimbursement matters.

4.      Venue is proper pursuant to 42 U.S.C. § 1395ff(b)(2)(C)(iii) and 42 C.F.R. § 405.1136(b) because the Encompass Health Hospitals' principal places of business are located in this judicial district.

5.      The aggregate amount in controversy, which is approximately $750,000, exceeds the jurisdictional amount required by 42 U.S.C. § 1395ff(b)(1)(E)(i) and 42 C.F.R. § 405.1136(a).

6.      This action has been commenced within 60 days of the Encompass Health Hospitals' receipt of the final agency decisions identified on Exhibit A, as required by 42 U.S.C. § 1395ff(b)(1) (incorporating by reference 42 U.S.C. § 405(g)).[1]

---

[1] Agency regulations presume that the date a party receives the Council's decision is five days after the date of the decision. 42 C.F.R. § 405.1136(c)(2).

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

**FACTUAL BACKGROUND**

7.     The Encompass Health Hospitals provide high-quality inpatient rehabilitation services to the residents of Clark County, Nevada and the surrounding areas utilizing a coordinated, interdisciplinary team ("IDT") approach to patient care. These teams often include specially trained rehabilitation physicians, physical therapists, occupational therapists, speech language pathologists, respiratory therapists, prosthetics/orthotics therapists, registered nurses, psychologists, pharmacists, dietitians, social workers, and case managers. The Encompass Health Hospitals offer specialized rehabilitation programs for patients recovering from serious illnesses or injuries, such as strokes or spinal cord injuries.

**Medicare Coverage of Inpatient Rehabilitation Services**

8.     Medicare is a federal health insurance program for the elderly and disabled established in 1965. The Medicare statute is codified at 42 U.S.C. § 1395 *et seq.*

9.     At all times relevant hereto, the Encompass Health Hospitals were Medicare-certified providers of inpatient rehabilitation services.

10.    Medicare covers IRF services for beneficiaries who require intensive rehabilitation and can be reasonably expected to require and benefit from an IDT approach to their rehabilitation programs with oversight by a rehabilitation physician. 42 C.F.R. § 412.622(a)(3)-(5); *see also* 42 U.S.C. § 1395y(a)(1)(A) (all services billed to Medicare must be medically reasonable and necessary).

11.    Prior to a patient's admission to the IRF, a specially trained and physician-designated clinician must complete a comprehensive document called a pre-admission screening ("PAS") that summarizes the patient's overall condition and medical history. A rehabilitation physician then reviews the PAS to determine whether the patient qualifies for the Medicare IRF benefit. The PAS must be completed and, when the patient is found to be eligible for acute rehabilitation services, approved by the rehabilitation physician within 48 hours prior to the patient's admission to the IRF. *Id.* § 412.622(a)(4)(i).

12.     At all times relevant hereto, rehabilitation physicians were required to complete a post-admission physician evaluation ("PAPE") of each approved patient within 24 hours of admission. The chief purpose of the PAPE is for the rehabilitation physician to document the patient's status on admission and compare the patient's condition with that reflected in the PAS to ensure the patient remains a qualified IRF candidate. *Id.* § 412.622(a)(4)(ii).

13.     Within four days of a patient's admission to the IRF, the rehabilitation physician and IDT members must develop an individualized plan of care ("IPOC") outlining the services to be provided to the patient, the treatment goals, and anticipated discharge plans, among other things. *Id.* § 412.622(a)(4)(iii).

14.     Each patient's condition upon admission to the IRF must be sufficiently stable such that he or she can be expected to participate in and benefit from an intensive rehabilitation program. This program includes treatment by at least two therapy disciplines (e.g., physical and occupational therapy) and should generally consist of 15 hours of therapy treatment per week. *Id.* § 412.622(a)(3)(ii).

15.     IRF patients may participate in one-on-one, concurrent, and/or group therapy as part of their rehabilitation programs. One-on-one therapy consists of treatment of one patient by one therapist. Concurrent therapy involves individualized services provided by one therapist to two patients. Group therapy involves one therapist performing the same activity with three or more patients. According to CMS, the standard of care for IRF patients is individualized (or one-on-one) treatment. CMS generally anticipates that the preponderance of therapy provided to a patient during his or her IRF stay will consist of individualized treatment.

16.     CMS has not established standards for the provision of concurrent and group therapies in the IRF setting.

17.     The patient must also require physician supervision of his or her rehabilitation program. Medicare requires that the patient's need for such oversight be

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169

LEWIS ROCA

documented in the form of at least three face-to-face visits between the rehabilitation physician and the patient each week. *Id.* § 412.622(a)(3)(iii).

18.     CMS further requires that each patient's IDT, including the rehabilitation physician, meet at least once per week to review the patient's condition, his or her progress toward the goals outlined in the POC, and discharge plans, among other things. *Id.* § 412.622(a)(5).

**The Medicare Administrative Appeals Process**

19.     The Medicare program is administered by CMS, which is an agency housed within HHS. CMS contracts with private entities to perform various functions on its behalf, including but not limited to claims processing, claim audits, and adjudication of administrative appeals involving adverse claim determinations.

20.     Medicare Administrative Contractors ("MACs"), for example, process claims for payment and, in addition, review claims to ensure compliance with CMS coverage criteria.[2] Such audits can also be undertaken by other contractors known as Recovery Audit Contractors ("RACs"), Supplemental Medical Review Contractors ("SMRCs"), or the Comprehensive Error Rate Testing ("CERT") contractor. MACs, RACs, SMRCs, and the CERT contractor can review almost any claim on a pre- or post-payment basis to ensure the submitting provider's documentation conforms with all Medicare coverage and documentation rules.

21.     In the event a CMS contractor audits and denies a provider's claim, that provider may avail itself of an administrative appeal process to contest the adverse claim determination. This appeals process consists of five stages: redetermination, reconsideration, a hearing before an Administrative Law Judge ("ALJ"), a request for review by the Medicare Appeals Council ("the Council"), and judicial review in federal

---

[2] Each MAC is assigned to a different geographic region of the country. For example, one MAC is responsible for performing various functions on CMS' behalf for providers and beneficiaries in Nevada, California, and Hawaii.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

district court. CMS designed the administrative appeals process to be informal and, in most cases, non-adversarial in nature.

22.     Requests for redetermination are processed by MACs. Requests for reconsideration are handled by separate contractors known as Qualified Independent Contractors ("QICs"). Hearing requests are adjudicated by ALJs in the Office of Medicare Hearings and Appeals ("OMHA"). Requests for Council review are processed by the Council, which is a component of the HHS Departmental Appeals Board. In most cases, the Council issues the final agency decision on behalf of the Secretary with respect to Medicare claim appeals.

23.     Medicare regulations mandate that different information be included with each appeal submission. For example, when filing an appeal with the Council the provider-appellant must, among other things, identify the part(s) of the ALJ's decision with which the provider disagrees.

24.     Medicare regulations permit CMS' contractors to recoup alleged overpayments if the associated claims remain denied following the second level of administrative review. This occurs regardless of whether the provider continues to contest the adverse claim determination at the ALJ hearing and/or Council review stages of appeal. *See* 42 C.F.R. § 405.379(f). Consequently, many providers, including the Encompass Health Hospitals, have substantial amounts of revenue tied up in what are ultimately determined to be baseless claim denials.

**Medicare Appeals Backlog**

25.     The Medicare statute requires that OMHA and the Council adjudicate claim appeals submitted to their respective agencies within 90 days of receipt. 42 U.S.C. §§ 1395ff(d)(1)(A) and (d)(2)(A). For more than a decade, HHS has been out of compliance with these statutory obligations. *See generally Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 186-188 (D.C. Cir. 2016) (summarizing the history of the Medicare claim appeal backlog). / / /

26.    Approximately five years ago, the U.S. District Court for the District of Columbia issued a mandamus order requiring HHS to clear the backlog of pending ALJ appeals by the end of the 2022 fiscal year. *See Am. Hosp. Ass'n v. Azar*, 2018 WL 5723141 (D. D.C. Nov. 1, 2018).

27.    On April 10, 2023, the District Court dissolved its mandamus order after HHS reported that it had reduced the backlog of appeals pending before OMHA by 99.84%.

28.    Despite OMHA's resolution of its backlog, the Council, which was not subject to the District Court's mandamus order, continues to struggle with its own backlog of pending appeals relative to its adjudication capacity. In a 2017 report, HHS revealed that the Council's annual appeals workload increased by almost 2,000% between the 2009 and 2015 fiscal years.[3]

29.    Despite increased funding from Congress, the Council remains unable to timely perform its basic adjudicative functions. In its fiscal year 2024 funding request to Congress, HHS disclosed that the backlog of pending Council appeals for the 2022 fiscal year was 17,411. This represented a miniscule change from the fiscal year 2022 backlog, which was 18,740 cases.[4] HHS went on to state that the Council's adjudication capacity based on fiscal year 2022 data was 7,000 cases annually, which only marginally outpaced the 5,920 new appeals received.[5]

30.    The Council is under significant pressure to address the backlog by any means available. The Council has accordingly resorted to utilizing "multiple strategies" and "innovative ways" clear its backlog of cases.[6]

---

[3]    HHS, *HHS Primer: The Medicare Appeals Process* (2017), *available at* https://www.hhs.gov/sites/default/files/ omha/files/medicare-appeals-backlog.pdf (last accessed August 18, 2023).

[4] HHS, *Fiscal Year 2023 Justifications of Estimates for Appropriations Committees*, at 198 (2022), *available at* https://www.hhs.gov/ sites/default/files/fy2023-gdm-operating-plan.pdf (last accessed August 18, 2023).

[5] HHS, *Fiscal Year 2024 Justification of Estimates for Appropriations Committees*, at 236 (2023), *available at* https://www.hhs.gov/ sites/default/files/fy-2024-gdm-cj.pdf (last accessed August 24, 2023).

[6] HHS, *Fiscal Year 2023 Justifications of Estimates for Appropriations Committees*, at 198 (2022), *available at* https://www.hhs.gov/ sites/default/files/fy2023-gdm-operating-plan.pdf (last accessed August 18, 2023).

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

31.    As HHS acknowledged in its fiscal year 2024 funding request, "The backlog at [the Council] impacts many constituencies, including beneficiaries, whose appeals are prioritized, [and] the provider supplier community…[a]s of September 30, 2022, the average amount in controversy of an appeal pending adjudication [by the Council] was approximately $170,000, for a total Medicare appeals backlog value of over $2.9 billion, compared to $500 million in FY 2021."[7]

**PROCEDURAL HISTORY**

32.    From approximately 2012 to 2022, CMS' contractors audited and denied 3,693 Medicare claims submitted by the Encompass Health Hospitals. The value of these claims ranged from approximately $2,000 to more than $40,000 each and more than $220 million in the aggregate. The Encompass Health Hospitals disagreed with most of those adverse claim determinations and exercised their administrative appeal rights.

33.    The Encompass Health Hospitals have, as a general matter, been successful with their claim appeals to date. For example, approximately 16% of denials were overturned at the redetermination and reconsideration levels of appeal. During the subsequent ALJ hearings, approximately 47% of the denials were reversed. In many cases, the MAC whose jurisdiction includes Nevada participated in the proceedings before the ALJs and stipulated to the entry of fully favorable decisions despite its previous redetermination decisions affirming the claim denials. *See* 42 C.F.R. § 405.1038(c).

34.    As a result of the Encompass Health Hospitals' success during the first three stages of administrative appeal, claim denials valued at almost $57 million were overturned.

35.    The claims associated with the appeals reflected on Exhibit A involved acute rehabilitation services rendered from 2013 to 2018. Those claims were audited and denied by CMS' contractors on various dates.

/ / /

---

[7] HHS, *Fiscal Year 2024 Justification of Estimates for Appropriations Committees*, at 210 (2023), *available at* https://www.hhs.gov/ sites/default/files/fy-2024-gdm-cj.pdf (last accessed August 24, 2023).

36.     The Encompass Health Hospitals disagreed with the auditors' determinations and filed appeals. The MACs and the QICs subsequently rendered unfavorable redetermination and reconsideration decisions. The ALJs to whom the cases were assigned conducted evidentiary hearings generally between 2020 and 2022.

37.     The ALJs rendered unfavorable determinations on a variety of bases, including but not limited to an alleged lack of medical necessity for the services, alleged failures to timely and/or accurately complete documentation, and purportedly insufficient therapy time. Plaintiffs disagreed with those adverse decisions and submitted requests for review to the Council.

38.     The Encompass Health Hospitals used form DAB-101 to submit their appeals. The DAB-101 is a form developed by HHS for appellants to use to ensure they include the elements for an appeal required under the applicable regulations. *See* 42 C.F.R. § 405.1112(a) (requests for Council review may be made on a standard form).

39.     The Encompass Health Hospitals fully and accurately completed a form DAB-101 for each appeal.

40.     On each form, Plaintiffs identified the ALJs' coverage determinations as the parts of the hearing decisions with which they disagreed.

41.     The Encompass Health Hospitals further explained that they disagreed with the ALJs' decisions because the beneficiaries met Medicare eligibility criteria for IRF services and that the ALJs had failed to appropriately consider relevant evidence, such as witness testimony, in the administrative records.

42.     Plaintiffs' requests for Council review contained all elements specified under applicable regulations because each appeal contained the name of the party filing the appeal, the ALJ appeal number, the identity of the Medicare beneficiary, the beneficiary's health insurance claim (HIC) number, the dates of service for the claim under appeal, the date of the ALJ's decision, and the reason(s) why the Encompass Health Hospitals disagreed with the ALJ's action.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169

LEWIS ROCA

43.     Despite the Encompass Health Hospitals' submission of complete and compliant requests for review, the Council has refused to perform the requisite *de novo* review of each case and instead summarily adopted the ALJs' decisions.

44.     The Council's rationale for its actions is the same as or similar to the following for all cases identified on Exhibit A:

> The request for review does not identify any error in the ALJ's findings or explain how they are not supported by the record. Accordingly, in the absence of *specific* exceptions and finding no clear error on the face of the ALJ's decision, we affirm the ALJ's findings and conclusions regarding coverage and liability without further discussion. (emphasis original)

45.     In case M-21-2297, for example, the ALJ affirmed the denial of the claim in question because the services were allegedly not medically reasonable and necessary. Encompass Health Desert Canyon appealed that determination to the Council and argued, "…the beneficiary met the criteria for admission to the IRF." The Council denied this appeal, erroneously concluding that, "[t]he request for review does not identify any error in the ALJ's findings or explain how they are not supported by the record."

46.     As another example, an ALJ issued an unfavorable decision on the basis that the beneficiary did not require physician involvement in their rehabilitation program. Encompass Health Las Vegas sought Council review of the ALJ's action on the basis that, "The beneficiary met the criteria for admission to the IRF. The ALJ decision did not take into account all testimony provided at the hearing." The Council, however, refused to consider the appeal because Encompass Health Las Vegas purportedly had not specified the portion of the hearing testimony not considered by the ALJ, failed to identify the part(s) of the ALJ's decision with which it disagreed, and did not explain the reason(s) for its appeal. The Council issued its decision in this case under appeal number M-21-737.

47.     In case M-20-3345, Encompass Health Henderson received an unfavorable ALJ decision on the basis that the beneficiary received an allegedly excessive amount of concurrent and group therapy. When asking the Council to review that action, Encompass Health Henderson stated, "The beneficiary met the criteria for admission to the IRF. The

- 10 -

ALJ's decision did not take into account all the testimony provided at the hearing. We reserve the right to file a supplemental brief pursuant to 42 C.F.R. § 405.1120." Plaintiff later submitted a supplemental brief on or about May 5, 2023 expanding on the reasons why it disagreed with the ALJ's decision. The Council subsequently issued its decision more than two months later on July 28, 2023 adopting the ALJ's decision because Encompass Health Henderson allegedly failed to identify the part(s) of the ALJ's decision with which it disagreed and state the bases for disagreement. The Council falsely stated in its decision that, "We also received no supplemental brief from the appellant…"

48.     The examples provided above are reasonably representative of the circumstances surrounding the appeals and Council decisions at issue in this case.

49.     Upon information and belief, the Council denied Plaintiffs' administrative appeals in an effort to reduce its enormous backlog of pending cases and not based on any substantive deficiencies with the appeal submissions.

50.     The IRF services in question were medically reasonable and necessary in that the records support the patients required intensive rehabilitation programs with physician supervision and an IDT approach to their care.

51.     The documentation in the administrative record demonstrates that applicable documentation requirements have been met.

52.     The Council decisions identified on Exhibit A represent the Secretary's final agency decisions. The Encompass Health Hospitals have exhausted their administrative remedies, and the Secretary's decisions are ripe for judicial review.

**COUNT I**

53.     Plaintiffs hereby incorporate by reference paragraphs 1 through 52 herein.

54.      The term "substantial evidence" refers to relevant evidence that a reasonable person would accept as adequate to support a proposition. Evidence can be "substantial" if it is more than a scintilla but less than a preponderance. *See Richardson v. Perales*, 402, U.S. 389, 401 (1971).

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169

LEWIS ROCA

55.     The Secretary's final decisions are not supported by substantial evidence because a reasonable person would not accept the evidence in the administrative record as adequate to support the conclusions reached by the Council. *See* 42 § U.S.C. 405(g) (incorporated into the Medicare statute by way of 42 U.S.C. § 1395ff(b)(1)(A)). For example, contrary to the Council's decisions, the evidence in the record establishes in each case that Plaintiffs identified the parts of the ALJs' decisions with which they disagreed and explained the reasons for such disagreement.

### COUNT II

56.     Plaintiffs hereby incorporate by reference paragraphs 1 through 52 herein.

57.     A government agency's failure to apply the correct legal standards to a claim before it is grounds for reversal of the agency's decision. *See Lester v. Chater*, 81 F.3d 821, 829-30 (9th Cir. 1995).

58.     The Secretary's final decisions do not apply the correct legal stands governing Medicare claim appeal procedures and/or coverage of IRF services. For example, applicable regulations do not require appellants to furnish "*specific* exceptions" or identify what part of the administrative record supports their appeals when requesting Council review.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1    **PRAYER FOR RELIEF**

2          WHEREFORE, Plaintiffs respectfully request that this Court:

3          59.    Reverse the Secretary's final agency decisions.

4          60.    Grant Plaintiffs any other legal or equitable relief that the Court may deem

5    just and proper.

6          Dated this 27th day of September, 2023.

7                                                  LEWIS ROCA
                                                   ROTHGERBER CHRISTIE LLP
8

9                                                  By: */s/  E. Leif Reid*
                                                   E. Leif Reid
10                                                 NV Bar No. 5750
                                                   One East Liberty Street, Suite 300
11                                                 Reno, NV 89501
                                                   Tel: (775) 823-2900
12                                                 lreid@lewisroca.com

13                                                 Adam L. Bird, (*pro hac vice*)
                                                   D.C. Bar No. 1005485
14                                                 **CALHOUN BHELLA & SECHREST LLP**
                                                   2121 Wisconsin Avenue N.W., Suite 200
15                                                 Washington, D.C. 20007
                                                   Tel: (202) 804-6031
16                                                 abird@cbsattorneys.com

17                                                 *Attorneys for Plaintiffs Encompass Health*
                                                   *Rehabilitation Hospital of Desert Canyon,*
18                                                 *LLC; Encompass Health Rehabilitation*
                                                   *Hospital of Las Vegas, LLC; and*
19                                                 *Encompass Health Rehabilitation Hospital*
                                                   *of Henderson, LLC*
20

21

22

23

24

25

26

27

28